## KING v. WATERMAN S. S. CORPORATION.

District Court, S. D. New York.

April 7, 1945.

Richard M. Cantor, of New York City, for plaintiff.

Gay & Behrens, of New York City (Russell C. Gay, of New York City, of counsel), for defendant.

GODDARD, District Judge.

This is a motion for summary judgment dismissing the complaint.

The plaintiff is a seaman and sues under the Jones Act, 46 U.S.C.A. § 688. In the complaint two causes of action are alleged; one for negligence; the other for maintenance.

The defendant's answer generally denies the allegations of negligence and of injuries, and sets forth the affirmative defense that on December 13, 1943, the plaintiff duly executed a general release releasing the defendant from any and all liability for the injuries alleged in the complaint.

A seaman may settle his claim for injuries and execute a valid release. Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Ames v. American Export Lines, Inc., D.C., 41 F.Supp. 930, and cases therein cited. However, seamen are regarded as wards of the Admiralty and a ship owner who, in defense of an action by a seaman for personal injuries, sets up the seaman's release, is under the burden of proving that it was executed fully, without deception or coercion, and that it was made by the seaman with full understanding of his rights; and the adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding. Garrett v. Moore-McCormack Co., Inc., supra.

It appears from the affidavits submitted and depositions taken that the S. S. Fairland left Philadelphia on April 22, 1943, for a voyage to foreign ports. She carried two extra life boats—steel twenty-four feet long, weighing two and one-half tons each. They rested on supports estimated to have been eight to fifteen feet above the deck.

On April 28th the Master ordered that the starboard boat be moved over near the rail so as to be ready for launching in the event of an attack by submarines. Bridles from the bow and stern of the life boat were hooked on to the block and fall leading from the derrick boom to the sampson post. The plaintiff, King, was told to get up into the life boat to keep the rope fall from kinking. The boatswain was at the steam winch which operated the derrick. As the life boat was being lifted, there was a sudden jerk on the winch line as a result of too much power being applied by the boatswain as the Master says, or as King says, the "little click that locks that thing is broke"; the life boat tilted violently and King was thrown to the deck according to his statement; either jumped or fell, according to the Master. King was carried to the ship's hospital where he was examined and treated by the ship's doctor; the following day he was removed to a

hospital at Panama where he remained until June 15th when he was returned to this country and went to his home in West Virginia where he remained until December 1st, when he came to New York to sign on another ship, which he did around December 20th, and he has been at sea most of the time since then.

No doctor's report is submitted, but in the affidavit of the attorney for plaintiff he states—"The hospital record at the Canal Zone evidence that plaintiff sustained a complete fracture of the right ilium with displacement, fracture of head of radius, left, fracture lower end of the radius." This affidavit also states that on July 28th, 1944 King visited the Beekman Street Hospital which reported—" * * * Examination reveals marked muscle atrophy above the right elbow and also in the region of the head of the radius. Referred to neurological clinic on Tuesday, August 1." King was also treated four or five times by his local doctor while he was at home in Virginia after the accident, but there is no report from him. King's base pay was $110 per month and keep, and he had been receiving a 100% bonus.

King returned from Panama on a passenger ship which landed at New Orleans and on the way to his home in Virginia he stopped off at Mobile and called on the agent of the steamship company who paid him $810. On December 13th, when he came to New York, he went to the steamship company's New York office, and said that he still had some disability, and asked for additional money. He was paid $100 and signed general release.

Insofar as form is concerned, this is a perfectly valid release. At the top, in large red print, appear the words: "Release of all rights. Read carefully—by signing this you give up every right you have," and in answer to one of the questions in the release, "What is this paper you are signing?" King has written, "Release of everything," and also that he has read it.

There is nothing to indicate that any misrepresentation was made to King, and I think it is equally clear that King knew that he was signing a release of all his rights against the steamship company. However, I am not satisfied that he knew what his full rights were. He had no lawyer to advise him. If the uncontradicted statement of King as to the manner in which he received his injuries is true, the steamship company would appear to

have been negligent and liable for damages, and in view of the indicated injuries, an award of more than $910 might reasonably be expected.

My impression from the affidavits and the testimony is that King, like many of his fellow seamen, was unfamiliar with such matters and may not have had a full understanding of his rights. Not only was he without legal advice, but insofar as it appears he was not fully informed as to the nature of his injuries or advised regarding settlement by the doctor in Virginia who treated him without charge, or by the doctor at Beekman Street Hospital where he received treatment as an out patient. As the facts now stand a settlement of $910 appears to have been inadequate and was accepted without a full understanding of his legal rights and with inadequate information regarding his injuries.

 There should be a trial of the issues at which the burden will be on the defendant to sustain the release "as fairly made with and fully comprehended by the seaman." Hume v. Moore-McCormack Co., Inc., 2 Cir., 121 F.2d 336, 347.

Motion for summary judgment denied.

Settle order on notice.